2010-7045. Mr. Panikowski. Good morning your honors and may it please the court. My name is Stanley Panikowski and I represent the petitioners who are all United States military veterans or the surviving spouses of veterans. The Veterans Administration had a duty to assist veterans in developing the facts to support their Agent Orange disability claims. The VA, however, did not perform this duty. Instead, the VA threw up a roadblock in the form of the Agent Orange Program Guide and it did so without conducting the notice and comment rulemaking that the APA requires. After more than three decades of litigation, this court can finally remove that roadblock so that veterans and their survivors can pursue the full scope of benefits that Congress has This court should grant the requested relief for three primary reasons. First, the petition is timely under tolling principles. Second, the Agent Orange Program Guide was a substantive or legislative rule that was required to be but was not subjected to APA notice and comment rulemaking. And third, this court can and should order the Department of Veterans Affairs to open for re-adjudication all claims denied under the Program Guide so that benefits may be available from the date the original claim was filed. Didn't the promulgation of this guideline have to have been challenged within 30 days of its issuance, 60 days of its issuance? No, Your Honor. The Agent Orange Program Guide was promulgated on April 17, 1978. At the time, this court did not exist, and the Veterans Judicial Review Act had not been passed. Therefore, at that time, the only limitations period that could have governed the filing of an action was 28 U.S.C. Section 2401. But 20-plus years then passed, and this court was in existence, and you had a place to challenge it. Your Honor, it is correct that in 1988, exclusive jurisdiction was vested in this court over matters like this. However, at the time, there was strong evidence to believe that the conferring of exclusive jurisdiction on this court would not affect existing district court cases. There are statements in the legislative history to that effect. The course of the litigation indicates that the parties believed that even though a case brought at that time would come to this court, that it could continue to pursue litigation in the district court. It seems quite extraordinary, however, the extent to which this case lay dormant for so many years, and without your sort of somebody pressing it or trying to do something to get it moving. Perhaps, as Judge Lurie suggested, trying to move it over to this court would have, it seems like that might have been the natural effort by the plaintiffs in this case moving, right? No? Your Honor, there were several options that were theoretically available. The plaintiffs pursued some of those options and did not pursue others at that time. The plaintiffs did try to get the case moving again in the district court through the periodic filings of papers that updated the law and facts through a motion to expedite the proceedings. They did not take some of the more extraordinary measures that the government now suggests that they should have, such as going to the D.C. Circuit to seek appellate mandamus, and that is for understandable reasons given that their case was going to be presumably decided by the district court judge whom they would have been effectively accusing of being delinquent in his duties. Moving on to your other issue, which is whether or not this was substantive rulemaking. What case would you cite to us as the closest in terms of establishing that this would be substantive, this guideline? Your Honor, these cases are very fact-specific, but I think that the closest case to this one would be the D.C. Circuit's decision in Pickus, where there was a rule that governed parole board determinations that did not dictate the outcomes, and which expressly left intact a formula that allowed consideration of various facts and circumstances, but which focused the decision-maker's attention onto one particular fact above all others. And the D.C. Circuit in that case said that the reason why the rule was substantive is because it narrowed the decision-maker's field of vision. And that is exactly the situation we have here in enacting a presumption for chloracne on the one hand going in a favorable direction for veterans, and all other types of disabilities going in an adverse direction for veterans, even if the adjudicators were still technically free under the literal language of other parts of the program guide to consider other evidence as a practical matter. I'm sorry. You say there's a presumption, effectively a negative presumption with respect to non-chloracne conditions, but that's a pretty broad reading, it seems to me, of the text of this guide. Now, I understand you argue that the guide was read for more than it said. Yes, Your Honor. But what it says is that just except for chloracne, there are presently firm data to incriminate the herbicides as causative agents of any other known category of disease. Now, that does not, as I read it, at least on its face, say that you're not free, or any claimant isn't free to come into an R.O. and say, well, that may or may not have been true as of April of 1978. But here's a study, or here's my evidence of why I can show you that there was causation, and the rest of the rule, or statement, or whatever it is, seems consistent with the notion that in each of these cases, you shall employ the normal proof requirements and procedures that would be applied in any other case. I don't see why that's erecting a presumption, at least on its face. Your Honor, you are correct that the except for chloracne statement on its face does not establish a definitive standard, and arguably does not even establish a presumption on its face. You are also correct that in theory, a claimant would be free to present other evidence. However, as we argued in our briefs, you cannot look at that statement in isolation. And above all, that statement needs to be viewed against the backdrop of the Veterans Administration's to assist claimants in developing the facts of their case. If we compare the world that we had under the program guide with the world that we would have had, but for the unlawful enactment of the program guide, one of two things would have happened. Either one, there would have been notice and comment rulemaking where the public, including veterans and organizations that assist veterans, would have been able to bring to bear in the VA's rulemaking process the many scientific studies that existed at the time, strongly suggesting a link between Agent Orange and a lot of the disabilities of veterans. Can we back up the slide? There certainly were studies linking dioxin with disabilities, but I didn't see much at all suggesting the relationship between the herbicide, which admittedly has a small, certainly potentially damaging, but nonetheless small concentration of dioxin. So when you say lots of studies linking Agent Orange with disabilities, set aside for a moment the studies linking dioxin with disabilities, and what studies can you point to that were out there prior to April 1978 that linked herbicides with this particular herbicide with the disabilities other than chlorhexidine? Your Honor, I believe that there are some studies in Scandinavia that reported an association of soft tissue sarcomas with exposure to herbicides, and that was cited in 56 Federal Register 7632, claims based on Your Honor, I don't believe that that was a pre-1978 study. I thought that was in the later period. That was during the... What happened between 78 and 85? Correct, Your Honor, and those studies were published during the program guide era. These were Scandinavian studies. So the program guide, which we look to as of the date of its promulgation, would be not inaccurate to say there's no firm scientific evidence, right? As far as it goes, I mean, you're just... Your Honor, I'm not sure if it would... Statement of fact. I'm sorry, Your Honor. Statement of fact. It's a statement of status. I think it's a statement of opinion, Your Honor. I think it's the Veterans Administration's regulatory opinion at an agency-wide level about what the state of the science was at the time. And however one would characterize the studies that were available during the early part of the program guide era, I think that it is clear that not only could there have been a different outcome if there were notice of common rulemaking, but there also could have been different outcomes in individual cases had Veterans Administration adjudicators, instead of applying the program guide, had actually performed their duty to assist the claimants in identifying these studies. Are you complaining about a lack of what you call proper rulemaking or about this particular program guide? Your Honor... You're saying that there could have been and there should have been better rulemaking, but that's not our issue, is it? Our issue is this particular one and the it is correct that at this point in time, the issue is whether the program guide was unlawfully promulgated and therefore what impact that has on claims denied under the program guide. And the timeliness of your raising it in this court. Yes, Your Honor. I'm having difficulty with the degree of formality and the degree of to which this program guide set forth a either substantive or legislative rule. I mean, suppose, for example, that the administrator of the Veterans Administration at that time had given a speech in 1978 and said, you know, Agent Orange is an upcoming to a group of Veterans Service organizations and said, you know, we recognize that Agent Orange is an upcoming issue. We are, we stand ready to adjudicate claims for Agent Orange injury, but right now we're aware of no firm evidence that Agent Orange is related to any disease other than chloracne. Would that speech have had to have been put into the federal register for notice and comment? Your Honor, I think that that speech would present a much weaker case. Why? For APA notice. Because of the audience. Well, let's suppose the audience also included a large number of regional office representatives. Your Honor, in that case, I think that we've moved much closer to the effective promulgation of a substantive rule that required notice and comment rulemaking, because that would have been a situation where the ultimate boss of the adjudicators was, was telling them, this is the official agency view on the state of the science and the message that the adjudicators perceived. And, and there's, there's a declaration on page JA 147 from a former supervisor of regional officers who said that this was in fact, the way the Agent Orange program guide was received. It was a message that you don't need to make individualized determinations on the state of the science. You don't need to assist claimants in actually developing the facts, supporting their case and compiling these studies. Rather the way that the message was received by the regional officers was that we grant chloracne claims. We deny everything else. And there was no evidence in the decisions that the adjudicators were actually going out and helping claimants to develop this evidence. Obviously at that time, the internet wasn't available. I'm having a hard time. I mean, it's almost like I, I'm reading this to almost say the reverse of what you're saying. I mean, this, this program guide explicitly says each case will receive a thorough development of all available evidence. Now you're saying there was a duty to assist. You can't be saying there was a requiring a duty to assist, right? Yeah. If anything, this goes beyond what they needed to do, I think, in terms of instructing people that there is a duty to assist. So that's one point. And then if you could respond to that, but also my second, which is if I'm an adjudicator and I'm seeing something that's issued April 17th, 1978, that says there is presently no firm data and you have a duty to examine the record thoroughly. If I'm adjudicating a case on April 17th, 1979, all this means to me is that as of April 17th, 1978, there was no firm data. It doesn't really carry off. It says presently. So it strikes me that on its face, it doesn't necessarily have an impact beyond the date it was issued, right? Your Honor, based on the language alone, one might be able to draw that conclusion. However, we have not only the broader context of the program guide here in terms of a series of mandatory statements, but we have the evidence of what the adjudicators were doing after issuance of the program guide, even as these scientific studies suggesting there may be a link between herbicides and these types of We don't have any evidence of the adjudicators changing their behavior as time went on to actually assist the claimants in compiling these scientific studies. Instead, we have a uniform pattern of grants for chloracne, denials for everything else that don't mention any of the scientific evidence. And we also have the declaration... But those were individual cases. If there was a challenge and there was strong scientific evidence, then one would assume that going down the pipeline of review, those petitioners would have prevailed on the merits of their claims, right? Your Honor, they would not have prevailed on the merits of those claims if they didn't have sufficient evidence to meet the standards for service connection. And one of the reasons why they didn't have that evidence was because adjudicators were applying the Veterans Administration's blanket view about the state of the science, rather than taking an individualized approach that not only required individualized decision-making... Do you mean they were accepting... You have to read this as they were accepting that one sentence, but not the other sentence, which says each case will receive a thorough development of all available evidence. So you're suggesting that people were not implementing that portion, but were only implementing the other portion. Your Honor, at least with respect to the duty to assist claimants to develop the scientific evidence on service connection and to consider that, that is correct. They were not applying that second, very general, vague statement in a way that would have been proper here. They were instead applying the first, more specific statement in a way that effectively created a rule here. Could I ask one further question to  This is a rule that was abrogated, I guess, in 1985, a program guide, whatever it is. Right? I mean, it wasn't in 85? Correct, Your Honor. When the Dioxin Act was passed. Yes. Why is it that Section 502 review by this court would be applicable to a regulation review of a regulation that is no longer in force? And why isn't the right way to approach the problem to say, let's look at the individual cases that we think were incorrectly adjudicated, pursuant to what we think was an incorrect application of the rule, or perhaps, you know, an over-reading of the language of the rule, whatever. Right. Rather than say, let's attack the viability of a rule, which is no longer in effect. I know of no other cases, maybe there are some, but I know of no other cases in which we've exercised this rule review with respect to a rule that's no longer in effect. Your Honor, the reason why this type of rule review is proper is because Section 502 grants this court the jurisdiction to review agency action or inaction under 5 U.S.C. Section 553. And the failure to comply with notice and comment rulemaking is one of the reviewable categories. Right. And if this were an ongoing rule in which notice and comment rulemaking had not been employed, then we would be able to say, well, the rule is no good, but the rule is no longer in effect. And it seems to me all we're really talking about now is the past possible effects of the rule on individual cases, which is ultimately where you're looking for relief. Why isn't seeking to reopen those individual cases the way to obtain relief rather than going after the rule in a rule review setting? Your Honor, there are some other standards that of cases that may be more difficult to meet. Here, there would have been an opportunity to review the rule while it was in force, had this court in Section 502 existed at the time, or had the district court made a decision in a timely manner. However, through no fault of petitioners, that time elapsed. Your Honor, may I reserve my remaining time for rebuttal? Well, you have no remaining time for rebuttal, but that's because we asked you a lot of questions. We'll give you your five minutes back. Thank you, Your Honor. Mr. Hughes. May it please the court. The petitioner's petition should be rejected for three reasons. First, it's barred by the statute of limitations. Second, the program guide is an interpretive rule and not a legislative. Which statute of limitations? 2401? 2401A is what we've argued in our brief, and as we noted, this court has decided already, albeit in a non-precedential decision, that 2401A should follow the same rule as 2501, which the Supreme Court... Is this a civil action commenced against the United States? Yes, I think so. You know, nobody's determined that a 502 action is necessarily a civil action, but I believe it was in Scarborough. The Supreme Court noted that other veterans' cases were civil actions as that term was defined. And what about equitable tolling? This was sort of filed in the wrong court, wasn't it, through no fault of his own? That's correct. Equitable tolling could potentially be applicable if 2401A were not the type of jurisdictional and mandatory statute of limitations that John R. Sand determined wasn't subject to equitable remedies. Well, John R. Sand is a really strange case, and I'm sure you know you deal with it every day. But the Supreme Court seems to have consciously limited itself in the breadth of what it was saying to an instance of a statute that it had said repeatedly was jurisdictional and not subject to equitable tolling, and to have pointedly said nothing about the applicability of that principle as a matter of analogy to other statutes, which seems to me to leave us in a situation in which it's hard to say that John R. Sand speaks presidentially to 2401. Wouldn't you agree with that? I would agree that John R. Sand does not make 2401A definitively jurisdictional, but I think— Or even help very much, really. I think the lesson we draw from John R. Sand is that certain statutes of limitations have long been considered jurisdictional and mandatory, and that— But the Supreme Court has never spoken to 2401, I guess. That's correct, but 2401A is a very old statute of limitations. In fact, I think it predates 2501. Which is what makes it a little interesting. It does. It may just never have come up. Certainly early in its history, 2401A, like most statutes and its predecessors, like most statute of limitations against the United States, was considered mandatory and jurisdictional for many decades. After Irwin, I think there were some differing opinions in the circuits, and some circuits still considered it jurisdictional. Some did not. I'll admit the precedent is still unclear out there today on that, but after Sand, I think the trend has been to follow Sand, particularly because of the age of 2401A and the language in 2401A, which, as this court noted in the non-presidential decision, is nearly identical to 2501. Now, Henderson, I suppose, could throw all of this into a cocked hat. Henderson could be decided in any one of a number of ways. They could affirm, of course, but if they reverse, they could reverse on the ground that, I gather, was the subject of discussion at the hearing, the argument in Henderson, on the ground that there's a difference between a court-to-court statute of limitations versus an agency-to-court statute of limitations, in which case this would fall on the agency-to-court side, and therefore, at least, assuming the court adopts that distinction, be subject to equitable tolling. Well, I'm not sure that I would concede that, Your Honor. I would concede that, obviously, for 7292, it's different. It's a timing of review statute, but what they decide in Henderson is about an appeals period, and I'm not sure that that would affect the underlying determination on 2401A, because 2401A is not the type of statute that's at issue in Henderson. It's the same kind of statute that was at issue in John R. Stand. It's a statute of limitation for bringing an initial claim to a court. Now, in this instance, it applies to a petition for review instead of a normal complaint, but that would be the same instance for APA actions in the district courts, and I'm not sure that if Henderson says 7292 is subject to equitable tolling because it's to court, that that would affect an interpretation of 2401A as applied in the district courts, but again, I recognize that this is not, except for the fact that this court has decided it in a non-precedential decision, which, of course, is not binding, but it's certainly evidence of at least three judges' view of the statute, that it is somewhat of an unclear issue, but we think the better reading of 2401A is that it's mandatory in jurisdictional statute limitations. Moving, if we could, to the substance of the program question, that the whole, yeah, the whole question of whether we're entitled, whether the agency was entitled to promulgate this guide without notice and comment, how would you define the category of cases in which an agency must undergo notice and comment, which is another way of saying what's the category that is excluded from those categories that are excused from the notice and comment explicitly in the statute? I just want to get the government's take on what is the category of cases in which notice and comment would be required. I think the government's position is notice and comment is only required if it affects substantive rights of the parties, and that if it's interpretive or merely providing information or guidance or the like, that that's not subject to the notice and comment requirement. Well, but the other side's answer is that, of course, it implicated substantive rights because it was viewed, fairly viewed, as a means by which to deny the claims based on its statement of what the state of the science was, right? That's their view. I think the government disagrees with that view based upon the entirety of the language in the program guide. I think that what they're asking the court to do is to pull out one phrase in the second paragraph and say, this established presumption. But if you didn't just follow one paragraph of this, they followed all the paragraphs, and indeed they followed all of the program manual itself, which in its foreword notes that it's not policy making. Well, is that assumption overcome? Let's assume there were evidence on the other side. They got a representative sampling of all the adjudicators during that six-year period, and they all said, we construed this based on the general sense of how we're supposed to do things around here, and we construed that sentence as being really strong guidance to us about what we should do. Would that be sufficient to overcome what you're suggesting here? No, I don't think so, Your Honor, because I think what's important is whether the rule was intended to be some kind of substantive rule limiting people's rights or providing a presumption, not whether some adjudicators may not have followed it to the letter. But again, I don't think that there's any evidence of that. The fact that we have this one declaration from this person, to me, is not enough to outweigh the fact that this rule specifically says you have to develop all of the evidence thoroughly in this case. But beyond that, this is one page in a several hundred page program manual that itself notes that it's not policy making. I mean, it's not meant to be binding in that sense. It's an informational guide. It's basically a how-to manual for adjudicators. The rules and regulations that are subject to notice and comment are. Another point on that really gets to the facts of this case. We absolutely concede that the issue of Agent Orange has a very long, difficult, and troubled history. And certainly during the late 70s and early 80s, there was a lot of dispute and debate and contention about how Agent Orange claims should be treated within the VA. But I think the most likely answer for why everything except pleurotomy was denied is the answer we gave in our brief, which was there just wasn't strong scientific evidence that would establish a direct causal connection between Agent Orange and a disease. And it's really important to remember that that was the standard at the time to show service connection. From 1978 until the liberalizing law in the Dioxin Act, a veteran couldn't just show some correlation between Agent Orange and their condition. They had to show that there was a direct causal link. It was the liberalizing laws that allowed it to be showed just based upon statistical studies and associations in the Dioxin Act, in the Agent Orange Act of 91, that have allowed almost all of these conditions to become service-connected. So even without this rule, the veterans would probably have had a very difficult time showing the direct causal connection because the scientific studies that are referenced and the like do not show a direct causal connection. You referred to the issue of whether the promulgation, the program, or whatever is binding or not. And I have always found that very unhelpful because these guides typically are pretty binding. I mean, what they say is, here's the way you go about adjudicating these cases. You do X, you do Y. They're not saying, do it the way you want. This is one suggestion as to how you may want to do it. In fact, this very guide has, this very provision has several certainly mandatory-sounding directives. That can't be the test, can it? Because as you know, manuals typically are just that. They are directives as to how to go about doing your job. That's correct. And to the extent I said it has to be binding in that sense, I was probably overstating a little bit what I mean. But that word does show up a lot in the discussions of this issue. And I've just always found it extremely unhelpful. What it really should be is the specific rule has to establish some kind of new substantive right or limitation or the like. And I do agree with you that this has some very mandatory language in it, which is every claim has to receive a thorough development of all evidence. Well, that's because there are VA, at the time and still today, there were VA regulations such as a duty to assist that requires the adjudicators to do it. What this is doing is restating the adjudicator's obligations under then existing law and regulation and saying, you know, there's this new issue out there of Agent Orange exposure. You're going to get some claims on this. Here's what we know to date. Here's what you should do. That doesn't establish a new rule. It's telling the adjudicators about a new issue and what their regulations and rules. That just isn't the kind of substantive rule that should be subject to notice in comment rulemaking. And if I could turn just last to the relief issue, because I think that's really critical here, too. It seems to me that the petitioners are asking you to, through a 502 challenge, which we think is untimely, but in any event, even if it is... Untimely under 2401 or Rule 4712? Well, it's certainly untimely under Rule 4712. We didn't make that argument because I think as the rule of the court, I think you're permitted to waive your own rules when you would like. And there were some extraordinary circumstances here in the delay at the district court. Certainly, you could find it untimely under your rule. Certainly, continue with your thought. So the government's view is that even if you disagree with us on the statute of limitations, even if you disagree with us that this is not a substantive rule, the most you can do is say, this rule is invalid and it should not have been applied in any of these cases. You should not, and indeed, we don't think you can, vitiate the finality of all these individual decisions. That is essentially asking you to issue a mandamus directing the secretary to consider these decisions non-final. And that's not only extraordinary relief, it's extraordinary relief that's not warranted here when they do have an avenue to get the relief they're seeking, albeit we recognize a difficult one. But if... Would our striking down the regulation affect the Q claim? I'm trying to think back on what you need to do to... I mean, you're saying the alternative is to file a Q claim. Would this have any effect on that? I don't want to speculate what's going to happen in each individual case because I don't know what the evidence in each individual case is. If it is, as petitioners say, that this rule was being implied as an inflexible presumption, and if in each individual case there actually was evidence of a direct causal connection between an underlying condition and Agent Orange that was ignored because of this rule, then they could make out a Q claim, potentially. But that's to be decided in each individual case. For this court to void the finality and say these claims should be still considered pending as of today, and get the more liberal laws applied to them today, which is what I think what petitioners are asking for, is... What about a pending... They would consider pending, but as of the dates when they were adjudicated. In other words, they would apply the science and the law as it existed between 78 and 84. I think that that's still impermissible because these are final decisions, and this court has held that even if there's grave procedural error, which certainly not following notice and comment rulemaking could apply to that, that's not enough to create a judicial exception to finality. Congress has created two methods to and that's either through a Q claim or through a reopening. Most of the petitioners in this case ultimately did get service-connected benefits by reopening their claims under the more liberalizing laws. What they're trying to get now... What we're talking about is the additional, the incremental payments for the period back into the initial claim, which was filed presumably sometime between 78 and 85. That's correct. Well, let me ask you a question that I posed to Mr. Pamukowski, do you think 502 applies at all to abrogated regulations? It probably shouldn't. I'm not aware of any cases in which we have addressed that issue or had an abrogated regulation before us in a 502 setting, but maybe I'm wrong. I see that I'm past my time if I can just answer briefly. I think there are no cases, there's no clear indication in 502, but the better rule would be that it doesn't because the purpose of 502 is to subject decisions of the secretary to review under normal APA standards. Before 502, some of the district courts would allow APA action, some of them wouldn't. 502 created that procedure, but the in-place ongoing rules and regulations to subject this court's review to a regulation that hasn't been in effect since 1985 is a very curious argument. Let me just ask you one more question. What should Mr. Block have done in this case, sitting in the district court and 2401 on the books plus our rule, what should he have done? Withdrawn from the district court proceeding and initiated a new filing here, or was that too late then too? Well, under the government's view of 2401A, I think it would have been too late six years after the rule went in place. So I think Mr. Block is in an unfortunate situation, although I would note that, sorry, not Mr. Block, Mr. Block actually ultimately got benefits. Mr. Burns, who's the only is not one of the original plaintiffs. It's Mr. Burns that's the original plaintiff. Mr. Burns is the only one of the individuals that I believe has actually never shown service connection for Agent Orange, even under the more liberalizing law. So although yes, he may have become time-barred as a result of Congress's change of jurisdiction from the district court to here, I'm not sure what the harm would be since he hasn't even shown service connection as we understand it, counsel can correct me if I'm wrong, under the more liberalizing laws. Presumably if a filing had been made in this court on the day that this court obtained jurisdiction under 502, then the timeliness question would be wrapped up in and totally equivalent to the question of whether this court would have jurisdiction over pre-existing regulations going back to whatever period of time. If Congress intended this court to have jurisdiction over regulations previously promulgated and still in effect, then it would be timely. I think that's correct, your honor, and like I said, there's no precedential decision on that and there's no indication in 502. There is, well, there's a non-presidential opinion out there, but it's not really citable. So for these reasons and the reasons in our brief, the petition for review should be rejected. Thank you, Mr. Hughes. Mr. Panikowski has five minutes. Thank you, your honors. I would like to make four points in response to the government's argument. First, it is not petitioners who are simply taking language in isolation. Rather, petitioner's argument is that you don't need a smoking linguistic gun to show that something is a substantive rule. This court in Paralyzed Veterans of America said that the definition of a substantive rule is broad and it's clear from this court's precedents and the DC Circuit's precedents that one must look at the entire context. And here, when you look at all of the facts and circumstances, starting with the language of the program guide, stemming through its context, the state of the science, the Abrams Declaration, and actual adjudications, the most reasonable conclusion is that the Agent Orange Program Guide was a substantive rule. Actions speak louder than words. Second, your honors, the government says that the petitioners would have had a difficult time establishing direct actual causation, but that was not an insurmountable hurdle at the time. It did not require conclusive proof. And when you consider both the Veterans Administration's duty to assist claimants, as well as the regulation requiring that reasonable doubt be resolved in the veteran's favor, it is possible these adjudications would have turned out differently. At a minimum, the veterans are entitled to a chance to prove that. This would be akin to a situation where a football team is trailing in the last two minutes, has the ball on their own 10-yard line, and they're facing the greatest defense in the history of football on the other side. And then suddenly the referee says, you know what? I'm changing the rules. It's a 58-minute game. The game's over. And then when the team complains, the referee says, well, you wouldn't have scored anyway. Well, they might have scored. And at a minimum, they were entitled to an opportunity to do that. Third, your honors, related to the equitable tolling argument, a related avenue for finding the claims to be timely would be an extension of this court's decision in Bright and finding that class action tolling applies here to extend the limitations period. This case was originally filed as a class action in district court, and the district court never ruled on the plaintiff's class certification motion. The Supreme Court in Irwin referred to that American pipe principle of class action tolling as equitable tolling. This court has called it statutory class action tolling. Under either rubric, that would be another route by which the petition is timely. And finally, your honor, this court is authorized to order the remedy of re-adjudication of any claims that a veteran would seek to reopen. That's available relief under the Administrative Procedure Act as part of this court's authority to set aside unlawful agency action, as well as this court's equitable powers. And petitioners are not asking this court to order a retroactive application of current substantive law. Veterans whose claims are reopened may still need to prove their claim under the substantive standards that were in existence at the time. However, they would be able to do so unencumbered by the unlawful rule of the Agent Orange Program Guide. Could I ask you one question about the whole tolling issue, which is certainly a troubling issue in this case, given the history of the case. I certainly understand where you're coming from on that. Is there a way of looking at this case as if, even though I recognize it was not transferred and it was refiled in effect in this court, is there a way of looking at this case as a single ongoing proceeding in which Congress had directed that a new and different court, not in existence at the time of the original pleading and therefore not subject to 1631, was to take control of at least some portion of the case, such that one could say what the D.C. Circuit did was, in its petition for rehearing, acknowledge the unavailability of 1631, but nonetheless anticipated that the case would continue in effect in a different forum, and therefore that we should respect the judgment of the D.C. Circuit with respect to its expectations of how the case would continue. Your Honor, it is possible to view Congress's intent in that way. It's very clear that Congress had an intent that cases like the one that was pending in the district court should continue to be litigated after the passage of the VJRA. The legislative history indicates that they believe that that should happen in district court. However, the D.C. Circuit, applying the Supreme Court's subsequent decision in Landgraf, reached a different conclusion, but I agree that it would be consistent with Congress's fundamental intent in enacting the VJRA that this court now decide the petition for review. Now, having spun out that theory, I'll ask you perhaps an unfair question. Is there any, what's the closest case law support for this theory that I propose to you? Your Honor, I'm not aware of any case law that would speak that directly to this circumstance. I think that's probably a good thing. I think even by analogy to this sort of situation, I'm looking for something in the law of the case type principle that the D.C. Circuit in effect handed off the case even though it didn't have the statutory power to transfer it. Your Honor, I think that principles of comedy in law of the case would certainly support that type of decision here. Ultimately, I agree that it needs to be anchored in congressional intent, and therefore, I think that looking at Congress's fundamental purpose would be the best starting point for this analysis. Thank you, Your Honor. Thank you, Mr. Panikowski. We'll take the case under advisement.